UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATTI HARTEL,

                                 Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.
_____

                                 DECISION & ORDER

                                 18-CV-341P

## PRELIMINARY STATEMENT

Plaintiff Patti Hartel ("Hartel") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by the undersigned. (Docket ## 6, 21).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 17). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II. **Hartel's Contentions**

Hartel contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10, 20). Specifically, Hartel maintains that the ALJ's physical RFC assessment is not based upon substantial evidence because it is not supported by any medical opinion. (Docket ## 10-1 at 16-24; 20 at 1-7). Hartel also claims that the Appeals Council failed to properly consider and weigh a medical opinion prepared by her physical therapist after the ALJ had rendered his decision. (Docket ## 10-1 at 13-16; 20 at 8-10). Finally, Hartel argues that the ALJ erred in assessing her credibility. (Docket ## 10-1 at 24-30; 20 at 8).

III. **Analysis**

I turn first to Hartel's challenge to the ALJ's RFC assessment on the grounds that it is not supported by any medical opinion contained in the record. An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC,

4

the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

As a general matter, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (citation omitted). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257, 259 (W.D.N.Y. 2018) (quotations omitted) ("the ALJ may not interpret raw medical data in functional terms"). Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection himself." *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

In his decision, the ALJ concluded that Hartel retained the ability to perform sedentary work so long as she was not exposed to certain environmental irritants. (Tr. 36).[1] In reaching this conclusion, the ALJ relied in part on an opinion provided by state examining

---

[1] The administrative transcript shall be referred to as "Tr. __."

physician Donna Miller ("Miller"), DO, that was based upon her examination of Hartel on August 7, 2013. (Tr. 315-19). In Miller's opinion, she diagnosed Hartel with bilateral knee pain, plantar fasciitis, obesity, asthma, and abnormal fasting glucose levels. (Tr. 318). Miller assessed that Hartel had moderate limitations for repetitive kneeling, squatting, and prolonged standing. (*Id.*).

Hartel maintains that the ALJ erred in relying upon Miller's opinion because the opinion was rendered before Hartel's motor vehicle accidents in December 2013 and February 2014. (Docket # 10-1 at 17-18, 22-24). According to Hartel, those accidents, especially the February 2014 accident, resulted in injuries to her cervical and lumbar spine, causing her to suffer ongoing pain in her neck, back and lower extremities. (*Id.* at 10). Because Miller's evaluation predated these injuries, Hartel reasons, it is impermissibly stale and cannot provide substantial evidence to support of the ALJ's determination. (*Id.* at 17-18, 22-24). The Commissioner disagrees, contending that Hartel's physical condition did not deteriorate after her accident. (Docket # 17-1 at 22-23).

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, 2018 WL 6715361, *5 (W.D.N.Y. 2018)); *Caswell v. Berryhill*, 2018 WL 4404578, *4 (W.D.N.Y. 2018) ("a stale medical opinion . . . is not substantial evidence to support an ALJ's finding"). An opinion "may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Whitsett v. Berryhill*, 2019 WL 156261 at *4 (quotations omitted).

The record in this case clearly demonstrates that Hartel suffered additional impairments after her December 2013 and February 2014 motor vehicle accidents. Prior to the

6

accidents, Hartel primarily suffered from impairments to her right knee and plantar fasciitis in her right foot, for which she received ongoing treatment. (Tr. 283-90, 293-96, 302-14, 330-34, 342-49, 557-60, 563-65). After and as a result of the accidents, Hartel suffered impairments to her cervical and lumbar spine, evidenced by MRIs conducted on April 7, 2014. (Tr. 324-28). In May 2014, Hartel was evaluated by Dr. Peter Capicotto, an orthopedic surgeon, who diagnosed her with cervical and lumbar disc herniation with myelopathy. (Tr. 336-40). The following month, she was evaluated by a neurosurgeon, P. Jeffrey Lewis ("Lewis"), MD, who noted that although Hartel's MRI findings were "subtle," she suffered severe restricted range of motion in both her cervical and lumbar spine. (Tr. 327-28). Lewis suggested that surgery might be a treatment option and recommended that Hartel have a cervical discogram. (*Id.*). The records further demonstrate that Hartel received ongoing chiropractic treatment for impairments to her neck and lower back throughout 2014 and 2015, sometimes as frequently as three times per week. (Tr. 357-555).

Despite the record evidence documenting these additional impairments, the Commissioner nevertheless contends that "there was no[] . . . meaningful change in [Hartel's] condition since August 2013," permitting the ALJ to rely on Miller's pre-accident opinion. (Docket # 17-1 at 23). To support this contention, the Commissioner selectively cites favorable notations in the medical treatment notes, which, in any event, do not contradict the record evidence of Hartel's new impairments. (*Id.* at 22-23). To the contrary, no question exists that at the time of Miller's assessment in August 2013 Hartel had not been diagnosed with degenerative disc disease, an impairment the ALJ subsequently found to be severe at the time of his decision. (*Compare* Tr. 34 *with* Tr. 315-19). Further, as summarized above, the record demonstrates that Hartel received ongoing treatment for degenerative disc disease and complained of associated

7

functional limitations, including difficulty bending at the waist, maintaining a seated position, and turning her neck. (*See*, *e.g.*, Tr. 549). Under these circumstances I find that Miller's assessment was stale and provided little value to the ALJ in assessing Hartel's functioning at the time of his decision. *See Whitsett*, 2019 WL 156261 at *4 (medical opinions rendered prior to motor vehicle accident causing physical injuries were stale); *Caswell v. Berryhill*, 2018 WL 4404578 at *4 (medical opinion stale where "[p]laintiff experienced multiple events after the exam that allegedly exasperated her symptoms or otherwise affected her condition, including two other car accidents, surgeries, trauma stemming from arrest, and a fall"). Because Miller's was the only opinion upon which the ALJ relied to assess Hartel's post-accident functioning,[2] I find that the RFC assessment is not supported by substantial evidence and that remand is appropriate. *See Welsh v. Colvin*, 2016 WL 836081, *12 (W.D.N.Y. 2016) (medical opinion rendered before "significant deterioration" of claimant's mental status did not "constitute substantial evidence supporting the ALJ's determination") (collecting cases).

"As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *See Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d at 912).

---

[2] In his decision, the ALJ weighed other medical "opinions" contained in notes from Hartel's treating sources, including those from Dr. Dilamarter, Dr. Lewis, and Dr. Capicotto. (Tr. 39). Hartel disputes that these records constitute medical opinions and maintains that, in any event, they fail to support the RFC, particularly without recontacting the sources to obtain more information. (Docket # 10-1 at 20-21). The Commissioner maintains that the ALJ appropriately considered them in reaching his determination. (Docket # 17-1 at 25). With respect to the "opinions" of Drs. Lewis and Capicotto, the ALJ determined that they were entitled to "little weight" because they did not include a functional assessment of Hartel's limitations. (Tr. 39). With respect to the "opinion" of Dr. Dilamarter, the ALJ acknowledged that his assessment occurred before Hartel's February 2014 accident and therefore did not pertain to the post-accident period. (*Id.*).

8

Review of the record leads me to conclude that remand is appropriate to allow the ALJ to obtain a medical assessment of Hartel's post-accident functioning.[3]

In light of my determination that remand is warranted, I decline to address Hartel's remaining contentions concerning the new evidence submitted to the Appeals Council and the ALJ's credibility determination. *See*, *e.g.*, *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d at 260-61 (collecting cases); *see also Cranmer v. Colvin*, 2017 WL 489702, *17 n.7 (W.D.N.Y. 2017) ("[b]ecause I conclude that the evidence . . . fails to support the ALJ's conclusion . . . , I need not determine whether the additional materials that postdate the determination are both new and material"); *Stein v. Colvin*, 2016 WL 7334760, *3 n.2 (W.D.N.Y. 2016) (remanding where RFC determination was not supported by substantial evidence because ALJ based RFC on raw medical evidence and his own lay opinion; "[plaintiff] advances other arguments that she believes require reversal of the Commissioner's decision[;] [h]owever, because this [c]ourt disposes of this matter on the improper RFC determination, those arguments need not be reached"). On remand, the ALJ should determine, *inter alia*, whether to consider and weigh the medical opinion completed by Hartel's physical therapist that was submitted to the Appeals Council.

## CONCLUSION

Accordingly, the Commissioner's motion for judgment on the pleadings **(Docket # 17)** is **DENIED**, and Hartel's motion for judgment on the pleadings **(Docket # 10)** is

---

[3] At the time of the hearing before the ALJ, the medical evidence was exceedingly sparse, consisting primarily of treatment notes between March and May 2013 relating to Hartel's knee and foot impairments. (Tr. 52-53, 268-314). Thus, prior to the hearing, nothing in the record would have alerted the ALJ that Hartel claimed to suffer from any neck or back impairments. According to Hartel's attorney, due to a "clerical issue," more recent medical records had not yet become available for submission. (Tr. 50). Certainly, the preferable practice is to ensure that all relevant medical records and evidence in support of the claimed impairments are collected and submitted prior to the hearing.

**GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September 6, 2019